**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| **In the matter of:** | ) | |
| | ) | |
| **MOTION TO QUASH SUBPOENA TO** | ) | **Case No. 22-mc-00064** |
| **NON-PARTY JOURNALIST CARL** | ) | |
| **PRINE.** | ) | |
| | ) | |

---

**ORIGINAL ACTION PLAINTIFF STEVEN E. SHAW'S RESPONSE IN OPPOSITION
TO MOVANT CARL PRINE'S MOTION TO QUASH SUBPOENA**

---

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

I.      THE APPLICABLE SUBSTANTIVE LAW IS THAT OF THE D.C. CIRCUIT, NOT THE SEVENTH CIRCUIT. . . . . . . . . . . . . . . . . . . . . . 17

II.     THE LEGAL STANDARDS PERTAINING TO THE REPORTER'S PRIVILEGE IN THE D.C. CIRCUIT. . . . . . . . . . . . . . . . . . . . . . 19

III.    ANALYSIS: DEFENDANT INJECTED MOVANT INTO THE UNDERLYING LAWSUIT AS A RELEVANT WITNESS WITH KNOWLEDGE OF FACTS THAT ARE AT "THE HEART OF" MOVANT'S LIBEL *PER SE* CLAIM AND PRINE IS THE *ONLY* SOURCE FOR THAT INFORMATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

IV.     SHOULD THE COURT OPT TO GRANT MOVANT'S MOTION TO QUASH, ASSESSING ATTORNEY'S FEES AGAINST RESPONDENT IS NOT WARRANTED; THE FACTS REGARDING THIS ISSUE DO NOT DEMONSTRATE THAT MOVANT HAS BEEN UNDULY BURDENED AND RESPONDENT HAS NOT ENGAGED IN BAD FAITH BY SEEKING MOVANT'S DEPOSITION TESTIMONY. . . . . . . . . . . . . . . . . . . . . . 24

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

PRAYER FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

# TABLE OF AUTHORITIES

*Cases*

*Alberts v. HCA Inc.,*
    405 B.R. 498 (D.D.C. 2009)    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 27

*Alexander v. F.B.I.,*
    186 F.R.D. 78 (D.D.C.1998)    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Anker v. G.D. Searle & Co.,*
    126 F.R.D. 515 (M.D.N.C.1989)    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Ansur Am. Ins. Co. v. Borland,*
    No. 21-CV-59, 2022 WL 1605338
    (S.D. Ill. May 20, 2022)    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Branzburg v. Hayes,*
    408 U.S. 665, 92 S. Ct. 2646, 33 L.Ed.2d 626 (1972)    . . . . . . . . . . . . . . . . . . . . . 19

*Builders Association of Greater Chicago v. City of Chicago,*
    215 F.R.D. 550 (N.D. Ill. 2003)    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Estate of Klieman v. Palestinian Authority,*
    293 F.R.D. 235 (D.D.C. 2013)    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Evans v. Williams,*
    238 F.R.D. 1 (D.D.C. 2006)    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18 (fn. 12)

*Farnum v. Colbert,*
    293 A.2d 279 (D.C.1972)    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Flanagan v. Wyndham Int'l, Inc.,*
    231 F.R.D. 98 (D.D.C. 2005)    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 26

*Flatow v. Islamic Republic of Iran,*
    201 F.R.D. 5 (D.D.C. 2001)    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Goldberg v. Amgen, Inc.,*
    123 F.Supp.3d 9 (D.D.C. 2015)    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 25, 27

*Gonzales v. NBC, Inc.,*
    194 F.3d 29 (2nd Cir. 1999)    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19-20

*Harmon v. Liss,*
    116 A.2d 693 (D.C.1955)    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Hatfill v. New York Times Co.,*
    416 F.3d 320 (4th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23-24

*Heat & Control, Inc. v. Hester Industries,*
    785 F.2d 1017 (Fed. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Herbert v. Lando,*
    441 U.S. 153, 99 S. Ct. 1635, 60 L.Ed.2d 115 (1979) . . . . . . . . . . . . . . . . . . . . . 19

*Hood v. City of Chicago,*
    No. 1:19-mc-00123 (APM), 2019 WL 5295169
    (D.D.C. Oct. 18, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Hutira v. Islamic Republic of Iran,*
    211 F.Supp.2d 115 (D.D.C.2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Hyland v. Raytheon Technical Services Co.,*
    277 Va. 40, 670 S.E.2d 746 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*In re Slack,*
    768 F.Supp.2d 189 (D.D.C. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*James v. Powell,*
    154 Va. 96, 107, 152 S.E. 539 (Va. 1930) . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Kaiser v. Mutual Life Ins. Co. of N.Y.,*
    161 F.R.D. 378 (S.D. Ind.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Lee v. Dept. of Justice,*
    413 F.3d 53 (D.C. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Linder v. Department of Defense,*
    133 F.3d 17 (D.C. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Matter of Holsen,*
    No. 22-MC-24-JPS, 2022 WL 3213367
    (E.D. Wis. Aug. 9, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Mosely v. City of Chicago,*
    252 F.R.D. 421 (N.D. Ill. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*N.L.R.B. v. Mortensen,*
    701 F. Supp. 244 (D.D.C. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*N.Y. Times Co. v. Sullivan,*
    376 U.S. 254, 84 S. Ct. 710, 11 L.Ed.2d 686 (1964) . . . . . . . . . . . . . . . . . . . . . 23

*Raboya v. Shrybman & Associates,*
    777 F. Supp. 58 (D.D.C. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Richmond Newspapers, Inc.,*
    196 Va. 1, 82 S.E.2d 588 (1954) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Rosenthal v. R.W. Smith Co.,*
    260 F.Supp.3d 588 (W.D. Va. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Sourgoutsis v. United States Capitol Police,*
    323 F.R.D. 100 (D.D.C. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25-26

*Steele v. Goodman,*
    382 F.Supp.3d 403 (E.D. Va. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

*Suarez v. Loomis Armored US, LLC,*
    No. 22-MC-24-JPS, 2022 WL 3213367
    (E.D. Wis. Aug. 9, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Swidler & Berlin v. U.S.,*
    524 U.S. 399, 118 S. Ct. 2081, 141 L.Ed.2d 379 (1998) . . . . . . . . . . . . . . 18 (fn. 12)

*Tharpe v. Saunders,*
    737 S.E.2d 890 (Va. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21-22

*The Navajo Nation v. Peabody Holding Co., Inc,*
    255 F.R.D. 37 (D.D.C. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Tripp v. Dept. of Defense,*
    284 F.Supp.2d 50 (D.D.C. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Zerilli v. Smith,*
    656 F.2d 705 (D.C. Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

**Federal Rules**

FED. R. CIV. P. 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 14 (fn. 6)

FED. R. CIV. P. 45 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 17, 25

FED. R. EVID. 501 . . . . . . . . . . . . . . . . . . . . . . . . 17, 18 (fn. 12)

**Treatises**

8 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL
PRACTICE AND PROCEDURE § 2037 (2d ed.1994) . . . . . . . . . . . . . . . . . . . . . . . . 21

23 CHARLES ALAN WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE
AND PROCEDURE § 5425 (1980) . . . . . . . . . . . . . . . . . . . . . 18 (fn. 12)

**PURSUANT TO LOCAL RULE 7-1(c)(3)**, Steven E. Shaw, the Plaintiff to the action through which the witness subpoena under FED. R. CIV. P. 45 was issued, [1] files his Response in Opposition to Movant Carl Prine's Motion to Quash Subpoena.

## INTRODUCTION

This matter is before the Southern District of Indiana because the Movant, Carl Prine, is now domiciled within the State of Indiana.  Prior to moving to the Hoosier State, Mr. Prine was a reporter who worked in the Metropolitan Washington, D.C. area, specifically Northern Virginia, reporting primarily on matters pertaining to the United States military. In the course of pursuing his livelihood, Prine engaged in one or more conversations with the individual defendant in the District of Columbia federal lawsuit, Timothy C. Parlatore, who is also an attorney.  The fact that such conversations between Movant and Defendant occurred was not discovered through some surreptitious activities on the part of Respondent Steven Shaw or his attorneys.  Rather, Defendant places Movant at the center of the controversy through his FED. R. CIV. P. 26(a)(1) Initial Disclosures and through testimony Defendant provided when he was deposed on September 16, 2022. [2]

## FACTS

Defendant has asserted an affirmative defense of truth in which he relies upon the alleged information and communication received from Prine.  In August 2019, Respondent initiated

---

[1] *Steven E. Shaw v. The Honorable Kenneth Braithwaite and Timothy C. Parlatore*, No. 1:20-cv-00410-RM (D.D.C.) (caption of the Third Amended Complaint, EFC No. 46, filed on Sept. 28, 2020).  Steven E. Shaw will be referenced as "Respondent" in this Response. Timothy Parlatore is named in the D.C. action as the lone defendant in a Libel *per se* claim and will therefore be deemed "Defendant" throughout. Carl Prine will be referenced as "Movant."

[2] Respondent Shaw's Ex. No. 1, Deposition of Timothy G. Parlatore: 61:5 – 62:17; 65:2 – 66:5; 104:7-21; 117:8-17; 123:9-16.

communication with Movant and his associates. Movant disregarded Respondent's engagement and instead revealed Respondent as his "source" to Defendant, providing Defendant with the entirety of Respondent's communications, as will be demonstrated *infra*.  At no time did Movant treat these communications as privileged, nor has Defendant ever treated them as privileged.  These communications and information form the primary and only basis for Defendant's affirmative defense, go to the heart of the matter.  Further, no other source can provide Movant's communication with Defendant, and Defendant was never a source – he was only a recipient of information received by a source who was summarily compromised by Movant and handed over to Defendant for use in his defamation campaign against Respondent.

Respondent is seeking discovery which will show that Defendant had prior access to undisputable evidence that the false criminal allegations made by Defendant in his correspondence were untrue.  The discovery sought includes credible documentary evidence and Defendant's direct access to the offending reprisal military officials who were his clients and who participated in the creation of the documents at issue in both the relevant Privacy Act and Defamation causes of action.  It also includes correspondence, documents, and information Defendant received from non-clients – in particular the "media," including and especially Movant – and referenced by Defendant in this matter as part of his defense, through required disclosures and deposition testimony.

**The Beginning**.

On or about October 11, 2018, Respondent Shaw was subjected to a reprisal pretext administrative proceeding called the Field Naval Aviator Evaluation Board (FNAEB) to deprive Plaintiff of his ability to operate aircraft in the Navy.  One of the key witnesses was Lt. Colonel Michael Nesbitt, USMC, the Executive Officer (second most senior officer) of the command who

provided untruthful testimony.   To support his falsified contentions, Nesbitt proffered "contemporaneous counseling notes" that purported to document lawful orders that were given to Respondent followed by testimony that these orders were disobeyed – an act punishable as a crime under the Uniformed Code of Military Justice.   These "notes" were provided to the panel in the normal course of business by none other than Lt. Colonel Nesbitt:

```
-----Original Message-----
From: Nesbitt, Michael C LtCol VFA-106
Sent: Thursday, October 18, 2018 1:03 PM
To: Hoyt, Thomas E CDR SFWSLANT, CO <thomas.hoyt@navy.mil>
Subject: RE: Request info for FNAEB

V/R,
SHAM

-----Original Message-----
From: Hoyt, Thomas E CDR SFWSLANT, CO
Sent: Wednesday, October 17, 2018 7:40 PM
To: Nesbitt, Michael C LtCol VFA-106 <michael.c.nesbitt@navy.mil>
Cc: Shaw, Steven LT VFA-106, Instructor <steven.e.shaw@navy.mil>
Subject: Request info for FNAEB

LtCol Nesbitt,


If it's possible, can you provide copies of the handwritten notes of counseling
sessions between yourself and LT Shaw throughout his time at VFA-106.  Thank you.


V/r,
```

Further, those notes were included in the FNAEB report:



23 Oct 2018

From: CDR Hoyt, Thomas E., USN, CO STRIKE FIGHTER WEAPONS SCHOOL ATLANTIC
To: Commander, NAVAL AIR FORCES ATLANTIC
Via: (1) Commander, STRIKE FIGHTER SQUADRON ONE ZERO SIX
     (2) Commander, STRIKE FIGHTER WING ATLANTIC

Subj: REPORT OF PROCEEDINGS FOR FIELD NAVAL AVIATOR EVALUATION BOARD IN
      THE CASE OF LT STEVEN E. SHAW, USN, 1310

Ref: (a) COMNAVAIRFORINST 5420.1G

Encl:

(6) Summary of testimony by LtCol Michael C. Nesbitt, USMC, before the board, 11 Oct 2018

(12) Written statement by LT Nicholas Len, USN, to the board dtd 10 Oct 2018

(14) Written summary of counseling notes by LtCol Nesbitt

(16) Statement by LtCol Nesbitt to STRKFITRON 106 Command Investigation dtd 26 Jun 2018

The panel determined that the Commanding Officer's and Executive Officer's statements

contained so many discrepancies that they could not be relied upon for the proceedings' purposes:



Case 1:20-cv-00410-RDM   Document 13-1   Filed 03/16/20   Page 4 of 4

Subj: REPORT OF PROCEEDINGS FOR FIELD NAVAL AVIATOR EVALUATION BOARD IN
      THE CASE OF LT STEVEN E. SHAW, USN, 1310

board found that this date conflicted with LT Shaw's recollection and with squadron flights records. An
additional discrepancy arose regarding the date of a phone call between LT Shaw and CDR Scott. LtCol
Nesbitt's notes regarding the phone call are dated 24 April, while CDR Scott's statement summary indicates
that this call took place on 2 May. The specifics of these discrepancies are noted in the findings of the board.
Resolving these discrepancies is beyond the scope of this FNAEB. In order to simplify this matter, the
testimony and counseling notes of LtCol Nesbitt and the command investigation's interview summary for
CDR Scott were not considered by the FNAEB in making its recommendation. [FB(30), (45), (46), (47),
(48), (57), (64)]

The command continued to reprise against Respondent through various adverse administrative actions and punitive retention.  In an effort to balance the equities, Respondent was advised to engage the media in the hopes that a fairer investigation of Respondent's circumstances would be undertaken and counter the widespread falsities that were being intentionally published by Navy officials. To this end, Respondent contacted Goeff Ziezulewicz of the Military Times. One of the primary goals of this communication was to convey that Lt. Colonel Nesbitt "created fake evidence (the notes) to frame one of his subordinates (Respondent) with multiple crimes and then submitted it to the DOD IG investigator":

> 1. As I have mentioned before, the senior member of my Field Naval Aviator Evaluation Board (FNAEB), asked Lt Col Nesbitt if he took these notes after each counseling session, and Lt Col Nesbitt said he did.  This is important, because some of his claimed dates are impossible, meaning he could not have taken these notes after each counseling session.

Ziezulewicz communicated to Respondent that Movant would be handling any further inquiries into the matter:

> **Steven Shaw** <steven.e.shaw@gmail.com>                     Fri, Aug 30, 2019 at 9:38 PM
> To: cprine@navytimes.com
>
> Carl,
>
> Geoff Ziezulewicz gave me your email address and told me to get in touch with you. I can be reached by email or cell at your convenience, 214-728-1748. I look forward to hearing from you.
>
> Steven

> **Steven Shaw** <steven.e.shaw@gmail.com>                     Mon, Sep 9, 2019 at 12:21 PM
> To: "Ziezulewicz, Geoff" <geoffz@militarytimes.com>
>
> Geoff,
>
> Here is some amplifying information about the video I sent you from the Tailhook Convention last weekend.  I still have not heard back from Carl.  Is the Navy Times no longer interested in covering this story?  My understanding is that the Navy Times was digging deep on this.  I don't want to keep bothering you with additional information if there's no interest.  I appreciate your help.
>
> Steven

Movant disregarded Respondent's engagement.   Movant did, however, immediately engage Defendant.   Movant appears to have either sent and/or orally narrated Respondent's assertions regarding the notes:

> I accurately and correctly stated that we were unaware of how LT Shaw obtained copies of LtCol Nesbitt's personal notebook, **but that he had sent copies to members of the media in an attempt to smear LtCol Nesbitt.** [3]

On or about December 16, 2019, the Assistant Secretary of the Navy reviewed the circumstances Respondent was confronting, specifically the reprisal found by the DODIG and ordered the removal of all adverse material that had been generated from Respondent's military record:

---

[3] Declaration of Timothy Parlatore, 1:20-cv-00410-RM (D.D.C.), ECF No. 12-1, ¶ 5.

a. The command directed investigation (CDI) of [b)(b)] ████, ordered by [b)(6)] ████ and [b)(6)] ████ and conducted by CDR Bryan Roberts, USN is invalid because it was ordered for a retaliatory purpose and was conducted in a retaliatory manner;

b. Because the CDI is invalid, any action taken against LT [b)(6)] which uses the CDI (or its enclosures) as the basis, in whole or in part, for such actions is invalid;

c. If a Command Investigation (CI) is ordered in accordance with reference (c), it may only be ordered by USFFC, and investigated by an officer who is assigned to USFFC and who does not have the designator of 1310 or 1320. Any witness who provides a statement must be informed that any previous statements made by them for the purposes of the CDI will not be used in the CI. USFFC may use the CI for any lawful follow-on personnel actions. However, if a CI is ordered, it may only inquire into the following areas:

(1) Whether [b)(6)] ████, without authorization, recorded F/A-18 TOFT training sessions; and

(2) Whether [b)(6)] was conducting unauthorized training (such as Velocity Vector), or was otherwise training outside of phase.

3. Because the CDI is invalid, I direct that you order the following actions be taken:

a. Correct and/or remove any adverse or derogatory material that resulted from the CDI- to include the fitness report covering the period 18FEB01 through 18JUN25 and the fitness report covering the period 18JUN26 through 19JAN31- from ████ [b)(6)]s Official Military Personnel File (OMPF).

Noteworthy is mention of the possibility for a reinvestigation. Defendant being given the ASN M&RA letter unleashed upon the DODIG and the ASN M&RA by accusing them of "placing lives in danger" as a result of the decision to remove all of the false and adverse information created and facilitated by his clients. On or about January 24, 2019, Defendant drafted and published correspondence, "Parlatore letter to Congresswoman Luria." [4] The following are excerpts from this letter:

---

[4] Letter to Congresswoman Elaine Luria, 1:20-cv-00410-RM (D.D.C.), ECF No. 2-5. Upon information and belief, Defendant drafted this letter in Falls Church, Virginia.

Dangerous Actions by ASN M&RA

The FNEAB did not rely on CDR Roberts' CDI report, but rather took testimony from direct eyewitnesses and original documents. The decision to invalidate this lawfully convened and conducted process is completely without basis and ignores the mountain of evidence that LT Shaw's continued flight status is an unmitigated risk that endangers lives. Assistant Secretary Slavonic's uninformed and unilateral invalidation of this lawfully constituted and conducted proceeding is an abuse of his authority and an impermissible intrusion on the authority of CNAL to evaluate the qualifications of Naval Aviators.

…but Assistant Secretary Slavonic is knowingly ignoring the risk and placing lives in danger without any justification.

…respectfully request that your office get involved in this situation to ensure that both DoD OIG and ASN M&RA's actions do not unnecessarily place any lives in danger…

Everything contained in Defendant's correspondence referenced and incorporated the previously removed Privacy Act protected adverse information with one exception – a new claim of criminal misconduct – that Respondent broke into and entered Lt. Colonel Nesbitt's office to obtain a copy of the "notes" or that he unlawfully obtained them from the DODIG. Defendant's plan was to ensure a reinvestigation of Respondent and the allegations made were salacious and serious enough to incentive a new criminal investigation of Respondent. The hope was that a new investigation would take place:

> So there's need to really pile it on at that point. They certainly had plenty to administratively separate him or do whatever they wanted with him. My concern at that point is primarily that you potentially have an IG investigator who is breaking the rules. So, you know, that's why I said I don't know how he got it, you guys investigate. [5]

Contrary to his recent deposition testimony, Defendant knew that the notes had been provided to the FNAEB and knew that they were false. Defendant testified that Movant was the one who informed him about the notes. Defendant has placed the notes and Movant into the case in his defense to support the truthfulness of his statements of criminality. [6]

---

[5] Respondent's Ex. No. 1: 37:9-15.

[6] *See* 1:22-mc-00064, ECF No. 1-4, p. 2, Shaw's Rule 26(a)(1) Initial Disclosures.

As set forth above, on or about January 24, 2019, Defendant drafted and published correspondence, [7] which had as an attachment Privacy Act Protected material [8] that instantly found its way to cocktail parties across the country.   Within that document the following written statement on page 10 was made, "It is unknown how LT Shaw came to possess a copy of LtCol Nesbitt's notebook in the first place. It appears that he either unlawfully searched LtCol Nesbitt's office to make copies for himself or received copies from [the DoD IG]. Either possibility is a very serious and deeply concerning issue." [9]

The newly formed false criminal allegations made by this attorney is that Respondent is guilty of one of several crimes under the Uniformed Code of Military Justice.   The "pattern of misconduct" a/k/a criminal activity of Respondent also included the breaking and entering to steal documents from his senior officer and/or conspiracy to commit orders violations are felony offenses that carry maximum punishments, *inter alia*, to include dismissal from the military service and depending on the charging schema up to a total of 10 years of confinement or more and total forfeiture of pay and allowances.   A conviction on any one charge would constitute a felony conviction and a Dismissal or Dishonorable Discharge.   As discussed, these false allegations were part of the false narrative that Defendant Parlatore put forward to his claim that Respondent was a

---

[7] Letter to Congresswoman Elaine Luria, 1:20-cv-00410-RM (D.D.C.), ECF No. 2-5.

[8] Defendant Parlatore was well aware of the concerning nature of this tactic stated, "If you were not personally responsible for this fabrication and false statements, then someone on your staff was and should be held accountable," the letter continues. "Someone either intentionally fabricated this claim, or someone failed at the simple task of carefully reading the sources before writing a letter claiming that the sources 'have revealed credible evidence.'" https://www.politico.com/news/2021/11/23/bernie-kerik-january-6-apology-523259 (last visited Oct. 1, 2022).

[9] Letter to DOD IG, 1:20-cv-00410-RM (D.D.C.), ECF No. 2-4, p. 10, fn. 10.

criminal and his clients were innocent.  These claims are not shared by the U.S. Navy as reflected by Respondent leaving the Navy with an Honorable Discharge, his security clearance intact, and all of the offending material being removed permanently from his record for a second time.

Respondent Navy Lieutenant Steven Shaw was an active-duty service member subject to the Uniformed Code of Military Justice.  In the statement made and published by Defendant, an active practitioner in the military justice segment, he is falsely accusing Respondent, *inter alia*, of the following criminal offenses under the Uniformed Code of Military Justice:

    a)  Article 89         Disrespect toward a superior commissioned officer

    b)  Article 92         Failure to obey order or regulation

    c)  Article 107       False Official Statement

    d)  Article 121       Larceny

    e)  Article 133       Conduct Unbecoming an Officer and a Gentleman

    f)  Article 131g      Wrongful interference with an adverse administrative proceeding

Respondent has sought through discovery, *inter alia*, the documents that Defendant Parlatore relied on and/or the persons he received the information from in support of repeated declarations by Parlatore in these proceedings that the libelous statement he made was true, as follows (under 1:20-cv-00410-RM (D.D.C.):

- Defendant's Fourth Affirmative Defense: "Plaintiff's **libel claims fail because the statements are true.**" ECF No. 7, p. 13: *Defendant's Answer to Complaint*.

- Defendant's Fourth Affirmative Defense: Plaintiff's **libel claims fail because the statements are true.** ECF No. 52, p. 5: *Answer to Third Amended Complaint*.

- "In an effort to counter the negative effects of Plaintiff's dishonest campaign, Defendant wrote a letter to Rep. Luria on behalf of his four clients, who were also her constituents, **to provide her with the true story**, supported with documents that Defendant was in legal possession of."  ECF No. 62, p. 5: *Memorandum in Opposition to Plaintiff's Motion to Compel*.

- "In addition to the claims Plaintiff raises against Navy leadership, the complaint accuses me of libel, related to two statements that I made in communications on behalf of my clients. However, despite Plaintiff's best efforts to misconstrue these statements, **the inescapable fact is that both statements were true**." ECF 12-1, p. 2, ¶ 4: *Declaration in Opposition to Motion to Stay*.

- The first allegedly libelous statement is when I wrote a complaint to the Department of Defense Office of the Inspector General asking them to investigate their own investigator, David Ursini, for a range of misconduct, including improperly providing copies of evidence to Plaintiff, LT Shaw. In this complaint, I accurately and correctly stated that <u>**we were unaware of how**</u> LT Shaw obtained copies of LtCol Nesbitt's personal notebook, but that he had sent copies to members of the media in an attempt to smear LtCol Nesbitt. We wanted them to investigate whether Mr. Ursini had improperly provided it to him, or if he had obtained it through other means, such as scanning a copy from LtCol Nesbitt's office. **This statement is true and therefore not libelous.** ECF 12-1, p. 2, ¶ 5: *Declaration in Opposition to Motion to Stay*.

## ARGUMENT AND AUTHORITIES

### I.   THE APPLICABLE SUBSTANTIVE LAW IS THAT OF THE D.C. CIRCUIT, NOT THE SEVENTH CIRCUIT.

Under FED. R. EVID. 501, it is state law that determines the applicability of an asserted privilege in civil cases. Movant Prine's Motion to Quash argues that it is the law of the District of Columbia that applies to the invocation of the "reporter's privilege" asserted by Movant. [10] The instant matter is before the Southern District of Indiana solely because Movant is domiciled in the State of Indiana.  As a consequence, FED. R. CIV. P. 45 mandates that Movant's challenge to the subpoena to appear for a remote deposition, which was issued under the Federal District Court for the District of Columbia filing, be brought in the "district where compliance is required." FED. R. CIV. P. 45(d)(3)(A).  *See also* Rule 45's Committee Notes on Rules – 2013 Amendment (Subdivision (f)) ("Under Rules 45(d)(2)(b), 45(d)(3), and 45(e)(2)(B), subpoena-related motions

---

[10] Prine Brief in Support of Motion to Quash, Section II, p. 16 (court's pagination), ECF No. 1-1.

and applications are to be made to the court where compliance is required under Rule 45(c)"). Because not one of the alleged acts giving rise to either the Privacy Act or Libel *per se* claims occurred in the State of Indiana, that state's law regarding privilege, as well as that of the Seventh Circuit, is inapposite.

However, as noted *supra*, Movant argues for the application of the District of Columbia Code regarding the reporter's privilege.  Movant does this without offering a scintilla of evidence that any of the exchanges between Movant and Defendant ever took place within the jurisdictional boundaries of Washington, D.C. [11] or that the Libel *per se* claim is fashioned after the law of the District of Columbia.  Moreover, the underlying matter under which the subpoena to Movant was issued emanated from the ***Federal District Court*** for the District of Columbia, not the D.C. Superior Court. Both the Federal District Court in the District of Columbia and D.C. Court of Appeals have rather well-developed decisional law regarding the application of this privilege. [12]

---

[11] The issue pertaining to the specific controversy before this Court is the communication(s) between Movant and Defendant, not where the defamatory communications on the part of Defendant were published among other third parties. The physical address provided for the Navy Times is 1919 Gallows Road, Suite 400, Tysons Corner, Virginia 22182.  The listed mailing address for Sightline Media Group, the parent company for the Navy Times, is 901 North Glebe Road, 5th Floor, Arlington, Virginia 22203 (*see* https://www.navytimes.com/m/contact-us-2/ (last visited Sept. 29, 2022). The listed physical address for Sightline Media Group, according to the Virginia Corporation Commission, is 1919 Gallows Road, Suite 400, Vienna, Virginia 22182 (*see* https://cis.scc.virginia.gov/EntitySearch/BusinessInformation?businessId=766413&source=From EntityResult&isSeries%20=%20false (last visited Sept. 29, 2022).

[12] *See Evans v. Williams*, 238 F.R.D. 1, 3 (D.D.C. 2006): FED. R. EVID. 501 "requires the court, upon a claim of privilege, to 'determine how the issue would have been resolved under the 'common law.''" (quoting 23 CHARLES ALAN WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE § 5425 (1980)). *See also Swidler & Berlin v. U.S.*, 524 U.S. 399, 410, 118 S. Ct. 2081, 141 L.Ed.2d 379 (1998) (FED. R. EVID. 501 directs that courts look to "the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience").

Accordingly, it is the law of these courts that should determine whether Movant should be compelled to sit for deposition under Respondent's subpoena.

## II.   THE LEGAL STANDARDS PERTAINING TO THE REPORTER'S PRIVILEGE IN THE D.C. CIRCUIT.

While the role of the press in our republic is recognized in the First Amendment, its members possess "'no special immunity from the application of general laws.'" *Mosely v. City of Chicago*, 252 F.R.D. 421, 426 (N.D. Ill. 2008) (quoting *Branzburg v. Hayes*, 408 U.S. 665, 683, 92 S. Ct. 2646, 33 L.Ed.2d 626 (1972)). "Evidentiary privileges in litigation are not favored, and even those rooted in the Constitution must give way in proper circumstances." *Herbert v. Lando*, 441 U.S. 153, 175, 99 S. Ct. 1635, 60 L.Ed.2d 115 (1979). Accordingly, a person seeking to withhold discoverable information pursuant to claim of privilege bears the burden of demonstrating the application of the asserted privilege. *In re Slack*, 768 F.Supp.2d 189, 193 (D.D.C. 2011).

The D.C. Circuit has recognized a ***qualified*** privilege, under the First Amendment, that reporters may invoke to protect them from compelled disclosure of information gleaned during their news gathering activities. *Id*. This privilege "is not absolute, however, and may be abrogated upon a sufficient showing by the party seeking the information." *Hutira v. Islamic Republic of Iran,* 211 F.Supp.2d 115, 118 (D.D.C.2002). A court's protection from divulging a ***confidential*** source is described as "rigorous." *In re Slack*, 768 F.Supp.2d 189, 193 (citing to *Zerilli v. Smith,* 656 F.2d 705 (D.C.Cir.1981)). A less demanding showing is required when the information sought is not from a confidential source. *Hutira v. Islamic Republic of Iran,* 211 F.Supp.2d at 120 (citing to *Gonzales v. NBC, Inc*., 194

F.3d 29, 36 (2nd Cir. 1999)). [13]  *See also Goldberg v. Amgen, Inc*., 123 F.Supp.3d 9, 17 (D.D.C.

2015) ("[A] party seeking to compel reporter testimony faces a less weighty burden when seeking

non-confidential information" because "the risk of debilitating a journalist's ability to gather

information is considerably diminished.") (citations omitted).

If the party resisting the discovery meets his /her initial burden to demonstrate the privilege

applies, the burden shifts to the party that issued the subpoena to the reporter to demonstrate that

"'its interest outweighs the public interest in protecting the journalist's sources and information.'"

*Goldberg v. Amgen, Inc*., 123 F.Supp.3d at 15 (quoting *Estate of Klieman v. Palestinian Authority*,

293 F.R.D. 235, 241 (D.D.C. 2013)). Because the privilege is not absolute, the court presented

with this issue must conduct "a factual inquiry to decide whether the subpoena's proponent can

overcome the privilege." *Goldberg*, 123 F.Supp.3d at 16. In the course of this analysis, the court

must first ask "whether the 'litigant's need for the information ... is of central importance,'" *i.e*.,

whether the information sought from the journalist "'goes to the heart of the matter.'" *Hood v. City

of Chicago*, No. 1:19-mc-00123 (APM), 2019 WL 5295169 at *4 (D.D.C. Oct. 18, 2019) (quoting

*Zerilli v. Smith*, 656 F.2d 705, 713 (D.C. Cir. 1981). "If the information is crucial, then the balance

of interests favors disclosure." *In re Slack*, 768 F.Supp.2d at 194.  The second prong of the inquiry

requires a determination as to whether the party that issued the subpoena has reasonably exhausted

every other available source. *Id*. Whether exhaustion of sources has been met is determined case

---

[13] The *Hutira* court additionally noted in footnote 6 of the opinion:

> In fact, the Second Circuit went so far as to hold that "[w]here a civil litigant seeks
> nonconfidential materials from a nonparty press entity, the litigant is entitled to the
> requested discovery notwithstanding a valid assertion of the journalist's privilege if
> he can show that the materials at issue are of likely relevance to a significant issue
> in the case, and are not reasonably obtainable from other available
> sources." *Gonzales,* 194 F.3d at 36.

by case. *Lee v. Dept. of Justice*, 413 F.3d 53, 61 (D.C. Cir. 2005). "[W]here the journalist appears

to be the only one with access to information relevant to the case, courts are willing to compel

disclosure." *N.L.R.B. v. Mortensen*, 701 F. Supp. 244, 248 (D.D.C. 1988).

>    Finally, D.D.C. precedent urges caution in these circumstances:

>    A court with jurisdiction over a discovery dispute for an action pending in a different
>    district generally has limited exposure to and understanding of the primary action. *Heat &
>    Control, Inc.,* 785 F.2d at 1024; *Anker v. G.D. Searle & Co.,* 126 F.R.D. 515, 518
>    (M.D.N.C.1989). A court in such a situation should hence be cautious in determining
>    relevance of evidence, and in case of doubt should err on the side of permissive
>    discovery. *Heat & Control, Inc.,* 785 F.2d at 1024; *Anker,* 126 F.R.D. at 518. Additionally,
>    this Court has previously expressed its preference that a deposition proceed and the
>    deponent assert her objections during the deposition, thus allowing the deposing party to
>    "develop circumstantial facts in order to explore the propriety of the ... objection." *Kaiser
>    v. Mutual Life Ins. Co. of N.Y.,* 161 F.R.D. 378, 380 (S.D.Ind.1994), *quoted in Alexander
>    v. F.B.I.,* 186 F.R.D. 78, 97 (D.D.C.1998) (Lamberth, J.); *see also* 8 CHARLES ALAN
>    WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE
>    AND PROCEDURE § 2037, at 495 (2d ed.1994) (explaining that as a preferred alternative
>    to an order that discovery not be had, the moving party can usually be adequately protected
>    by making a Rule 30(d) motion during the course of the deposition).

*Flanagan v. Wyndham Int'l, Inc.,* 231 F.R.D. 98, 103 (D.D.C. 2005).

>    As will be set forth below, Respondent to this action, Steven Shaw, has met the burden and

the deposition of Movant Carl Prine should be compelled.

**III.   ANALYSIS: DEFENDANT INJECTED MOVANT INTO THE UNDERLYING LAWSUIT AS A
RELEVANT WITNESS WITH KNOWLEDGE OF FACTS THAT ARE AT "THE HEART OF"
MOVANT'S LIBEL *PER SE* CLAIM AND PRINE IS THE *ONLY* SOURCE FOR THAT
INFORMATION.**

>    The issue before this Court does not involve Movant protecting a source, confidential

(especially) or otherwise.  As demonstrated by Respondent's Exhibit No. 1, Defendant openly and

voluntarily testified concerning his exchanges with Movant, and particularly about the statement

that is at issue in the Libel *per se* claim. Under the law pertaining to defamation, Respondent must

prove "(1) publication of (2) an actionable statement with (3) the requisite intent." *Tharpe v.

Saunders*, 737 S.E.2d 890, 892 (Va. 2013) (citation omitted). "Actionable" means "both false and

defamatory." *Id.* "'Publication occurs when an actionable statement is transmitted to some third person so as to be heard and understood by such person.'" *Steele v. Goodman*, 382 F.Supp.3d 403, 419, fn. 52 (E.D. Va. 2019) (quoting *Suarez v. Loomis Armored US, LLC*, No. 3:10-cv-690, 2010 WL 5101185 at *2 (E.D. Va. Dec. 7, 2010)) (applying Virginia law).

In this instance, Defendant Parlatore is alleged to have published a false and defamatory statement to third persons about Respondent Steven Shaw and had one or more discussions with Movant Carl Prine about the topic. Because Defendant disputes that he issued any false statements regarding Respondent, he has put at issue what he conveyed to others, including Movant. [14] This easily qualifies as being central to or going to "the heart of" Respondent's Libel *per se* claim. Further, because Defendant so vociferously proclaimed, under oath at deposition, that he had communications with Movant regarding this central issue, there is absolutely no conceivable argument Movant could articulate to assert that he is protecting a confidential source. [15] A party may not claim privilege over material that they place at issue in litigation. *The Navajo Nation v. Peabody Holding Co., Inc.*, 255 F.R.D. 37, 44 (D.D.C. 2009). "Privilege cannot be used both as a sword and as a shield. . . . As a result, a party may not claim privilege over material that they place at issue in litigation." *Id.* (citations and quotes omitted). Moreover, because the communications

---

[14] Respondent's Ex. No. 1: 38:15 – 39:7; 40:2 – 41:3; 41:11-14; 41:20 – 42:9; 44:15 – 45:21.

[15] It is also notable that when answering questions at deposition, Defendant Parlatore, an attorney, did not consider his conversations with Movant to be in any way confidential or protected. *See* Respondent's Ex. No. 1, 104:7-21, where Defendant invoked "privilege" to exclude providing an answer to several questions, but unhesitatingly spoke Movant's name in answering one of the questions captured in the transcript. *See also* numerous other times Defendant invoked privilege to issues pertaining to other than Movant: 52:12; 93:11, 19; 95:8; 98:13; 99:19; 102:1; 103:1, 7; 108:9; 109:4; 112:11; 116:5.

at issue occurred *only* between Defendant and Movant, there are literally no other sources, reasonable or otherwise, for this information.

Fundamentally, the timing of the statements propounded by Defendant about Respondent's possession of Lt. Colonel Nesbitt's notes puts at issue Defendant's mental state, *i.e.*, Defendant's knowledge regarding the falsity of the statement.  In order to prevail on his Libel *per se* claim, Respondent must prove either (1) that Defendant published his statement **knowing** that it was "false, or believing it to be true, lacked reasonable grounds for such belief, or acted negligently in failing to ascertain the facts on which the publication was based" (*Steele v. Goodman*, 382 F.Supp.3d 403, 420) (citations omitted) – if Respondent is deemed a private individual – or (2) that the defendant made the statement with "'actual malice' -  that is, with knowledge that it was false or with reckless disregard of whether it was false or not'" (*Id.*) (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 280, 84 S. Ct. 710, 11 L.Ed.2d 686 (1964)) – if Respondent is deemed a "public figure."

Where a statement raises a ready inference that a person was charged with the commission of a crime, libel is presumed. *James v. Powell*, 154 Va. 96, 107, 152 S.E. 539, 543 (Va. 1930). Virginia law has designated the following as actionable as defamation *per se*:

> (1) statements that "impute to a person the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished," (2) statements that "impute that a person is infected with some contagious disease, where if the charge is true, it would exclude the party from society," (3) statements that "impute to a person unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of duties of such an office or employment," and (4) statements that "prejudice such person in his or her profession or trade."
>
> * * *
>
> [Further], "it matters not how artful or disguised the modes in which the meaning is concealed if it is in fact defamatory."

*Hatfill v. New York Times Co.*, 416 F.3d 320, 330-31 (4th Cir. 2005) (quoting *Richmond Newspapers, Inc.,* 196 Va. 1, 82 S.E.2d 588, 591 (1954)).

In the District of Columbia, any written or printed statement that falsely accuses one of committing a crime constitutes defamation *per se***.**  *See Raboya v. Shrybman & Associates*, 777 F. Supp. 58 (D.D.C. 1991).  If Defamation *per se*, the court will assume harm to the plaintiff's reputation, without further need to prove that harm:

> Any written or printed statement which falsely charges another with the commission of a crime is libelous *per se. See* 53 C.J.S. Libel and Slander § 38. In the District of Columbia, in order to be actionable as libel *per se,* the contents of a defamatory publication must " 'impute ... the commission of some criminal offense for which [the Plaintiff] may be indicted and punished, if the charge involves moral turpitude and is such as will injuriously affect [the Plaintiff's] social standing', or, ... the question is whether, from the language attributed to defendant, there is something from which commission of a crime can be inferred."

*Farnum v. Colbert,* 293 A.2d 279, 281 (D.C.1972), *quoting Harmon v. Liss,* 116 A.2d 693, 695 (D.C.1955) (citations omitted).

Because the underlying lawsuit has alleged that Defendant committed a tort based in defamation, inquiry into facts regarding Defendant's knowledge of the falsity of his statement is similarly central and relevant to the underlying litigation. *See also Rosenthal v. R.W. Smith Co*., 260 F.Supp.3d 588, 594 (W.D. Va. 2017) ("As to intent, '[t]he plaintiff also must show that the defendant knew that the statement was false or, believing that the statement was true, lacked a reasonable basis for such belief, or acted negligently in failing to determine the facts on which the publication was based'") (quoting  *Hyland v. Raytheon Technical Services Co.*, 277 Va. 40, 46, 670 S.E.2d 746 (2009)).

IV.   SHOULD THE COURT OPT TO GRANT MOVANT'S MOTION TO QUASH, ASSESSING ATTORNEY'S FEES AGAINST RESPONDENT IS NOT WARRANTED; THE FACTS REGARDING THIS ISSUE DO NOT DEMONSTRATE THAT MOVANT HAS BEEN UNDULY BURDENED AND RESPONDENT HAS NOT ENGAGED IN BAD FAITH BY SEEKING MOVANT'S DEPOSITION TESTIMONY.

FED. R. CIV. P. 45 requires that a party issuing a subpoena take reasonable steps to "avoid imposing undue burden or expense on a person subject to the subpoena." FED. R. CIV. P. 45(d)(1). A violation of this obligation will result in "an appropriate sanction - which **may** include lost earnings and reasonable attorney's fees." *Id*. (emphasis added).

In his Motion to Quash, Movant has invoked the reporter's privilege to avoid complying with Respondent's deposition subpoena.  However, as set forth above, that privilege is not absolute. *Tripp v. Dept. of Defense*, 284 F.Supp.2d 50, 54 (D.D.C. 2003). Further, the force of that privilege is diminished where the inquiry does not involve confidential sources. *Goldberg v. Amgen, Inc*., 123 F.Supp.3d 9, 17. Pursuant to his quest to avoid sitting for deposition, Movant has additionally requested that the Court sanction Respondent with an order for Respondent to pay Movant's attorney's fees pertaining to the Motion to Quash. [16]  In order to prevail on that issue, Movant must meet the burdens established by law.

The burden of proof regarding the oppressiveness of a subpoena lies with the party that filed the motion to quash. *Flatow v. Islamic Republic of Iran*, 201 F.R.D. 5, 8 (D.D.C. 2001); *Linder v. Department of Defense*, 133 F.3d 17, 24 (D.C. Cir. 1998). "Whether an undue burden has been imposed must be determined according to the facts of the case." *Alberts v. HCA Inc*., 405 B.R. 498, 502 (D.D.C. 2009) (citing *Linder*). "The mere fact . . . that a disputed subpoena is ultimately deemed unwarranted does not, standing alone, demand the imposition of sanctions." *Id*.

When a court evaluates whether a Rule 45 subpoena is unduly burdensome, it applies a "'balancing test, weighing the burdensomeness to the moving party against the deponent's need for, and the relevance of, the information being sought.'" *Sourgoutsis v. United States Capitol*

---

[16] Prine Brief, Section IV, ECF No. 1-1.

*Police*, 323 F.R.D. 100, 115 (D.D.C. 2017) (quoting *Flanagan v. Wyndham Int'l, Inc.*, 231 F.R.D. 98, 102 (D.D.C. 2005)).

As set forth in Section III *supra*, Movant has been identified as a third party to whom Timothy Parlatore, Defendant to the Libel *per se* claim in the D.D.C. action, communicated defamatory information about Respondent Steven Shaw.  Additionally, as also articulated above, it is an issue of disputed fact regarding Defendant's knowledge of the falsity of the allegation he conveyed to Movant.  This information is therefore "central" to that claim.  Moreover, because Defendant has testified – openly and notoriously – that Movant made factual assertions during the exchanges with Defendant, Respondent should have the opportunity to inquire regarding statements made by Movant.

Moreover, it is notable that the deposition will be taken remotely, meaning that Movant will not be required to undertake onerous travel to attend. "Indeed, courts within this [Seventh] Circuit have found notice of deposition by remote means as a factor weighing *against* a finding of undue burden." *Matter of Holsen*, No. 22-MC-24-JPS, 2022 WL 3213367 at *3 (E.D. Wis. Aug. 9, 2022) (emphasis in original).  *See also Ansur Am. Ins. Co. v. Borland*, No. 21-CV-59, 2022 WL 1605338, at *3 (S.D. Ill. May 20, 2022) ("While the subpoenaed individuals are located [out of state], [Defendants] will either take the depositions remotely or in [in the non-parties' state] and will last no longer than three hours.... Although the depositions will require time out of the individuals' days, the standard burdens inherent to every deposition cannot themselves be the kind of undue burden that warrants quashing of a deposition subpoena") (internal citations omitted) (quote pulled from *Matter of Holsen*).

Notwithstanding the foregoing, the key issue of focus in determining whether to award attorney's fees under Rule 45(d)(1) is the presence or absence of ***bad faith*** on the part of the

parking seeking the deposition. *Goldberg v. Amgen, Inc.*, 123 F.Supp.3d 9, 22-23 ("[C]ourts in this jurisdiction have looked to whether the subpoena was issued in bad faith or for some improper purpose"). *See also Alberts v. HCA Inc.*, 405 B.R. 498, 503 (collecting cases citing the need for a finding of bad faith before a court can impose discovery sanctions). This is true even in the Seventh Circuit: "A subpoena is obviously unduly burdensome if the information is wholly irrelevant under any reasonable legal theory; if the subpoena was issued for the purpose of harassment or if the party issuing the subpoena did not, in good faith, believe, after reasonable inquiry, that the subpoena was not unreasonable or unduly burdensome or expensive for the reasons indicated." *Builders Association of Greater Chicago v. City of Chicago*, 215 F.R.D. 550, 554 (N.D. Ill. 2003).

Accordingly, even if the Court decides to quash the subpoena commanding Movant to sit for a remote deposition, the imposition of an attorney's fees sanction against Respondent would be improper. Movant has not – and cannot – satisfy the burden of proof that is on him in order to obtain such relief.

## CONCLUSION

Based upon the extant decisional law and the facts in this case, Movant Carl Prine should be compelled to comply with Respondent Steven Shaw's deposition subpoena. The communications and information between Movant and Defendant Parlatore form the primary and purportedly only basis for Defendant's affirmative defense and go to the heart of the matter. No other source can provide Movant's knowledge of the exchange of information with Defendant and neither party treated their communications as privileged, as this information was then used in correspondence for the "benefit" of Defendant's clients with Movant's knowledge, as reflected in Movant's reporting – all favorable to Defendant and his clients.

Defendant's testimony is wholly reliant upon the information he received from Movant to make his criminal allegations against Respondent. Almost as concerning is Movant's unrestricted compromise of what was a "source" (Respondent). Movant cannot wield his sword and now demand a shield. Respondent has demonstrated that no privilege exists and, in the alternative, if a privilege were to be found, it has been overcome and Movant should be ordered to participate in a deposition.

Should the Court find that the reporter's privilege applies sufficiently to permit the quashing of the deposition subpoena directed to Movant, an attorney's fees sanction should not be imposed upon Respondent. The facts do not demonstrate that Movant has been unduly burdened; more pointedly, Respondent has not engaged in any bad faith by seeking information pertinent to his claims in the D.C. lawsuit through a vehicle that is clearly contemplated under the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

**WHEREFORE,** Respondent Steven Shaw prays this Court will overrule Movant Carl Prine's Motion to Quash Deposition Subpoena in its entirety; that the Court will Order Movant to sit for the deposition in compliance with Respondent's subpoena; that the Court will Order Movant to pay to the Respondent all reasonable attorney's fees and costs associated with the drafting and filing of this Response; and that the Court will Order any further relief in favor of Respondent the Court deems appropriate.

Respectfully submitted,

*/s/ John J. Morse*
John J. Morse, Atty. No. 16146-49
Morse & Bickel, P.C.
1411 Roosevelt Avenue
Suite 102
Indianapolis, IN  46201
Phone: (317) 686-1540
Fax: (317) 630-2790
Morse@MorseBickel.com

And

Eric S. Montalvo
Federal Practice Group
1750 K Street NW, Suite 900
Washington, D.C. 20006
(202) 862-4360 – Telephone
(888) 899-6053 – Facsimile
emontalvo@fedpractice.com

**Attorneys for Respondent:**
**Steven E. Shaw**

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of October, 2022, I electronically transmitted the attached document to the Clerk of Court using the ECF system for filing and transmittal of Notice of Electronic Filing, or sent by United States mail, first class prepaid postage or via electronic means as provided in their filings, to the following:

Katie Townsend
REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS
1156 15th St. NW, Ste. 1020
Washington, D.C. 20005
(202) 795-9303 – Telephone
ktownsend@rcfp.org
*Attorneys for Non-Party Movant:*
*Carl Prine*

Bradley Silverman
Brenda A. Gonzalez Horowitz
DOK-USAO Civil Division
601 D Street NW
Washington, D.C. 20001
bradley.silverman@usdoj.gov
brenda.gonzalez.horowitz@usdoj.gov
*Attorneys for:*
*Carlos Del Toro*
*Kenneth Braithwaite*
*Thomas Harker*

Timothy Parlatore
PARLATORE LAW GROUP LLP
One World Trade Center
Suite 8500
New York, New York 10007
timothy.parlatore@parlatorelawgroup.com
*Attorney Pro Se:*
*Timothy Parlatore*

*/s/ John J. Morse*
John J. Morse