UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| MOTION TO QUASH SUBPOENA TO | ) | No. 1:22-mc-00064-JMS-MJD |
| NON-PARTY JOURNALIST CARL PRINE | ) | |
| | ) | |

**ORDER TRANSFERRING MOTION TO QUASH**

This matter was filed in response to a subpoena issued in a case pending in the United States District Court for the District of Columbia ("the D.C. Court") captioned *Shaw v. Del Toro*, 1:20-cv-410-RDM ("the Shaw Case").[1]  For the reasons set forth below, the Court finds that the requisite exceptional circumstances exist and therefore **TRANSFERS** this motion to the D.C. Court pursuant to Federal Rule of Civil Procedure 45(f).

**I.  Background**

The facts alleged in the Shaw Case are difficult to summarize succinctly.  Very generally, as relevant to the instant motion, Shaw alleges the following in his Third Amended Complaint in the Shaw Case.[2]

---

[1] The Court notes that Movant Carl Prine asserts that the subpoena was not properly issued because it was signed by Shaw's counsel in the Shaw Case, who is not admitted to practice in this court. [Dkt. 1-1 at 5.] That assertion is incorrect, as the subpoena was (properly) issued from the D.C. Court pursuant to Federal Rule of Civil Procedure 45(a)(2), which requires that a subpoena be issued "from the court where the action is pending."

[2] The Court takes judicial notice of the filings in the Shaw Case.

Shaw, who serves as a Lieutenant in the Navy, was retaliated against by certain Navy employees, including his Executive Officer, Lt. Col. Michael Nesbitt, for acting as a whistleblower with regard to racial bias he perceived in his role as a naval aviation instructor. The retaliation took the form of, *inter alia*, a Command Directed Investigation ("CDI") into allegations of criminal misconduct, which Shaw alleges those who initiated the investigation ("the Initiators") knew to be false.  Shaw filed a complaint with the Department of Defense Inspector General Whistleblower Reprisal Investigation ("DoD-IG"), as a result of which "the DoD-IG substantiated that [the Initiators] committed acts of whistleblower reprisal against Lt. Shaw," and "the Secretary of the Navy directed that all of the adverse actions taken against Lt. Shaw and premised on the corrupt CDI be rescinded."  Third Amended Complaint ¶ 19, *Shaw Case*, ECF No. 46.  When the Initiators "became aware of the DoD-IG's investigation into their reprisal activities, these officials hired Defendant Timothy C. Parlatore, an attorney familiar with the Uniform Code of Military Justice and having a reputation for using the media, to assist in their defense." *Id.* at ¶ 21.

In the course of representing the Initiators, Parlatore filed a complaint with the DoD-IG against DoD-IG investigator David Ursini.  In that complaint, Parlatore stated that Shaw "surreptitiously leak[ed] information to the press to further his personal agenda, at the expense of the Navy.  For example, we have received inquiries from reporters regarding a significant amount of private information that LT Shaw has released to the media, including several surreptitiously recorded conversations with LtCol Nesbitt, as well as copies of LtCol Nesbitt's personal notes." *Shaw Case*, ECF No. 2-4 at 9-10.  In his Third Amended Complaint, Shaw

alleges that a footnote in that complaint constitutes libel *per se* against Shaw.[3] That footnote reads:

> It is unknown how LT Shaw came to possess a copy of LtCol Nesbitt's notebook in the first place. It appears that he either unlawfully searched LtCol Nesbitt's office to make copies for himself or received copies from Ursini. Either possibility is a very serious and deeply concerning issue.

*Id.* at 10 n.10. Parlatore has asserted the affirmative defense of truth in response to Shaw's libel claim. *Shaw Case*, ECF No. 52 at 5.

## II. Shaw's Reasons for Seeking Prine's Deposition

The subpoena at issue in the instant motion was issued to Carl Prine, a journalist who previously lived and worked in the Washington, D.C., area and now lives within this District. At the time of the events at issue in the Shaw Case, Prine worked as a journalist for the Navy Times. "From May 2019 to February 2020, Prine wrote, edited, or contributed to a handful of articles for the Navy Times that mention individuals and events involved in the Shaw [Case]." [Dkt. 1-1 at 5.]

> In response to the instant motion, Shaw asserts that he
>
> was advised to engage the media in the hopes that a fairer investigation of [Shaw's] circumstances would be undertaken and counter the widespread falsities that were being intentionally published by Navy officials. To this end, [Shaw] contacted Goeff Ziezulewicz of the Military Times. One of the primary goals of this communication was to convey that Lt. Colonel Nesbitt "created fake evidence (the notes) to frame one of his subordinates ([Shaw]) with multiple crimes and then submitted it to the DOD IG investigator."

---

[3] In addition to his libel claim against Parlatore, Shaw asserts a claim against Kenneth Braithwaite, the Secretary of the Navy, in his official capacity, for violation of the Privacy Act, 5 U.S.C. § 552a.

[Dkt. 8 at 11.] Shaw further asserts that Ziezulewicz told Shaw that Prine "would be handling any further inquiries into the matter." *Id.* Shaw reached out to Prine, but Prine "disregarded [Shaw's] engagement. [Prine] did, however, immediately engage [Parlatore]. [Prine] appears to have either sent and/or orally narrated [Shaw's] assertions regarding the notes," which, Shaw asserts, is evidenced by Parlatore's statement that "I accurately and correctly stated that we were unaware of how LT Shaw obtained copies of LtCol Nesbitt's personal notebook, but that he had sent copies to members of the media in an attempt to smear LtCol Nesbitt." *Id.* at 12 (citing Declaration of Timothy Parlatore, *Shaw Case*, ECF No. 12-1, ¶ 5). Shaw alleges that

> [c]ontrary to his recent deposition testimony, [Parlatore] knew that the notes had been provided to the FNAEB and knew that they were false. [Parlatore] testified that [Prine] was the one who informed him about the notes. [Parlatore] has placed the notes and [Prine] into the case in his defense to support the truthfulness of his statements of criminality.

[Dkt. 8 at 14] (citing *Shaw Case*, ECF No. 1-4, p. 2).

In Parlatore's Initial Disclosures in the Shaw case, Parlatore identified Prine as an individual "likely to have discoverable information that may be used to support [his] defenses," specifically "on the subject of [Shaw] being a limited purpose public figure," and "on the subject of [Shaw] surreptitiously recording and then disseminating conversations with his superior officers at the same time that he is also disseminating copies of Lt. Col. Nesbitt's notebook." [Dkt. 1-4 at 2.] Shaw thus seeks to depose Prine regarding his communications with Parlatore.[4]

---

[4] Shaw's response to the instant motion makes it clear that he is seeking to depose Prine to obtain evidence related to his libel claim against Parlatore. He does not allege that Prine has information relevant to his Privacy Act claim.

### III.  Discussion

Prine seeks to quash the subpoena because he argues that the D.C. Shield Law, D.C. Code § 16-4701, *et seq.*, "provides an *absolute* privilege against the compelled disclosure of journalistic sources, whether confidential or non-confidential."  [Dkt. 1-1 at 22.]  Indeed, that statute gives very broad protection to the type of information sought by Shaw from Prine, providing:

> Except as provided in section 16-4703, no judicial, legislative, administrative, or other body with the power to issue a subpoena shall compel any person who is or has been employed by the news media in a news gathering or news disseminating capacity to disclose:
>
> > (1) The source of any news or information procured by the person while employed by the news media and acting in an official news gathering capacity, whether or not the source has been promised confidentiality; or
> >
> > (2) Any news or information procured by the person while employed by the news media in the course of pursuing professional activities that is not itself communicated in the news media, including any:
> >
> > > (A) Notes;
> > >
> > > (B) Outtakes;
> > >
> > > (C) Photographs or photographic negatives;
> > >
> > > (D) Video or sound tapes;
> > >
> > > (E) Film; or
> > >
> > > (F) Other data, irrespective of its nature, not itself communicated in the news media.

D.C. Code Ann. § 16-4702.  It further provides:

> (a) A court may compel disclosure of news or information otherwise protected from disclosure under section 16-4702(2) if the court finds that the party seeking the news or information established by clear and convincing evidence that:

>    (1) The news or information is relevant to a significant legal issue before a judicial, legislative, administrative, or other body that has the power to issue a subpoena;
>
>    (2) The news or information could not, with due diligence, be obtained by any alternative means; and
>
>    (3) There is an overriding public interest in the disclosure.
>
> (b) A court may not compel disclosure of the source of any information protected under section 16-4702.

D.C. Code Ann. § 16-4703.

Prine asserts that the D.C. Shield Law applies to the question of whether Shaw is entitled to obtain discovery from him because the law of the District of Columbia applies to Shaw's libel claim against Parlatore. Prine is correct that the applicable privilege law is the law that applies to the libel claim. *See* Fed. R. Evid. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."). In his response, Shaw states:

> [Prine] argues for the application of the District of Columbia Code regarding the reporter's privilege. [Prine] does this without offering a scintilla of evidence that any of the exchanges between [Prine] and [Parlatore] ever took place within the jurisdictional boundaries of Washington, D.C. or that the Libel *per se* claim is fashioned after the law of the District of Columbia.

[Dkt. 8 at 18 (internal footnote omitted).] Unhelpfully, Shaw does not indicate which state's law he believes does apply to his libel claim,[5] although he alludes in a footnote to the possibility that

---

[5] As Prine correctly points out, Shaw's Third Amended Complaint does, in fact, invoke D.C. law, noting that the claim "is brought . . . within 1 year of Defendant Parlatore's publishing of the defamatory statements as required under D.C. Code § 12-301(4). *Shaw Case*, ECF No. 46, ¶ 7. That, alone, is not dispositive of whether D.C. law is properly applied to Shaw's libel claim.

it might be that of Virginia.[6] Shaw also argues that federal privilege law should apply because the Shaw Case is pending in federal court, which, given the clear instruction of Rule 501, is clearly incorrect.

Given the breadth of statutory protection provided by the D.C. Shield Law, whether that statute is applicable is clearly critical to the resolution of the instant motion. That determination depends on the choice-of-law analysis for Shaw's libel claim, an analysis clearly better conducted by the D.C. Court before whom that claim pends. In addition, the Court notes that several motions that could impact the instant motion are pending before the D.C. Court. First, Palatore has filed a motion seeking Rule 11 sanctions against Shaw's counsel in the D.C. Case, in which he seeks, *inter alia*, dismissal of the libel claim with prejudice. *See Shaw Case*, ECF No. 74-1. Palatore also has filed a motion for judgment on the pleadings on the libel claim. *Id.*, ECF No. 78. Obviously, if either of these motions is granted, the subpoena to Prine will become moot. Finally, Palatore has filed a motion seeking, *inter alia*, the voiding of all subpoenas issued by Shaw's counsel in the Shaw Case because Shaw did not provide Palatore with notice of any such subpoena, including the one to Prine. *Id.*, ECF No. 75.[7]

Given the centrality of the choice-of-law analysis, as well as the other pending motions that could impact the instant motion to quash, the Court finds that "exceptional circumstances" exist such that it is appropriate to transfer the instant motion to the D.C. Court pursuant to Federal Rule of Civil Procedure 45(f), to avoid the possibility of inconsistent rulings. In so

---

[6] That suggestion is based on the incorrect suggestion that what is relevant is where the communications between Parlatore and Prine took place, rather than which state's law applies to the libel claim. *Id.* at 18 n.11.

[7] Palatore represents that he only learned of the Prine subpoena because the instant motion was filed by Prine.

ruling, the Court notes that the Advisory Committee's note to Rule 45(f) acknowledges that "transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation" and that "[t]he prime concern should be avoiding burdens on local nonparties subject to subpoenas." Here, Prine is already being represented by counsel located in Washington, D.C., which lessens any burden he will face in addressing the motion in the D.C. Court.

### IV. Conclusion

For the reasons set forth above, the Court hereby **TRANSFERS** Prine's motion to quash, [Dkt. 1], along with the related motion requesting oral argument, [Dkt. 3], to the United States District Court for the District of Columbia pursuant to Federal Rule of Civil Procedure 45(f). The transferred motions relate to subpoenas issued in *Shaw v. Del Toro*, 1:20-cv-410-RDM.

SO ORDERED.

Dated: 20 OCT 2022

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.

