**1**                    IN THE UNITED STATES DISTRICT COURT
                         FOR THE DISTRICT OF COLUMBIA
**2**

**3**     IN RE: MOTION TO QUASH
          SUBPOENA TO NON-PARTY
**4**     JOURNALIST CARL PRINE,              Miscellaneous Action
                                             No. 1:22-mc-0109
**5**                 Petitioner,

**6**          vs.                            Washington, DC
                                             December 20, 2022
**7**     STEVEN E. SHAW,

                                             2:15 p.m.
**8**                 Respondent.
          _____/
**9**

**10**                  TRANSCRIPT OF VIDEO MOTION HEARING
                  BEFORE THE HONORABLE RANDOLPH D. MOSS
**11**               UNITED STATES DISTRICT JUDGE

**12**
          APPEARANCES:
**13**
          For the Petitioner:     LIN WEEKS
**14**                            KATIE TOWNSEND
                                     Reporters Committee for Freedom of
**15**                               the Press
                                     1156 15th Street, NW, Suite 1020
**16**                               Washington, DC 20005

**17**
          For the Respondent:    ERIC MONTALVO
**18**                           DAVID KEESLING
                                    Federal Practice Group
**19**                              1750 K Street, NW, Suite 900
                                    Washington, DC 20006
**20**

**21**    Also Present:          TIMOTHY PARLATORE

**22**
          Court Reporter:        JEFF M. HOOK
**23**                              Official Court Reporter
                                    U.S. District & Bankruptcy Courts
**24**                              333 Constitution Avenue, NW
                                    Room 4700-C
**25**                              Washington, DC 20001

**1**  the D.C. office of the Project On Government Oversight,

**2**  POGO; and tat it was published in several other D.C.-based

**3**  congressional offices.  So here, we think that's the

**4**  operative act.

**5**           And I think that makes sense, right, for a

**6**  defamation case, the -- this is a reputational based harm.

**7**  So where the publication occurred is where the reputation

**8**  suffers for a case --

**9**           **THE COURT:**  Well, I agree with you with respect to

**10**  the underlying case.  The only question I had is whether the

**11**  analysis is different.  Because this case actually is an

**12**  entirely separate, standalone case.  And whether this action

**13**  I should look at the place in which -- whether the place of

**14**  the wrong or the relevant place of action or inaction is

**15**  either where the subpoena would have been enforced or where

**16**  it issued.  I suppose if it's where it issued, it could be

**17**  the same analysis, because it issued from D.C. even though

**18**  it was initially enforced in Indiana, I take it.

**19**           **MR. WEEKS:**  Yes, Your Honor.  We did not find any

**20**  cases in Indiana suggesting that the correct choice of law

**21**  was separate for the subpoena as it would be for the

**22**  underlying case, if that's your question.

**23**           **THE COURT:**  Mr. Montalvo, let me ask you this just

**24**  to resolve this issue.  Do you agree that if I'm of the view

**25**  that state law controls for this purpose, that it's D.C. law

**1**     that is controlling versus any other jurisdiction?

**2**          **MR. MONTALVO:**  Yes, Your Honor.

**3**          **THE COURT:**  If I reject your view that it's

**4**     federal law and I conclude it's a matter of state law for

**5**     purposes of the privilege, do you agree that D.C. is the

**6**     right place for me to look?

**7**          **MR. MONTALVO:**  I believe D.C. is controlling, Your

**8**     Honor.

**9**          **THE COURT:**  So there's agreement that D.C. law is

**10**    controlling.  That's fine, then I'll apply D.C. law.  Okay,

**11**    that makes that easier.

**12**          Mr. Weeks, you can continue.

**13**          **MR. WEEKS:**  Thank you, Your Honor.  Just to wrap

**14**    up my introduction, either of those grounds, undue burden or

**15**    privilege, is sufficient to quash the subpoena.  We've also

**16**    moved in the alternative for a protective order limiting the

**17**    scope of any deposition to the specific purported

**18**    conversation that plaintiff is interested in.  But we do

**19**    think the subpoena should be quashed altogether.  So I can

**20**    talk about undue burden first.

**21**          **THE COURT:**  Okay.

**22**          **MR. WEEKS:**  As things -- so I'll reiterate, again,

**23**    here that if the defamation claim doesn't survive the motion

**24**    for judgment on the pleadings, we expect that plaintiff

**25**    would withdraw the subpoena which would moot our motion.

**1**  Colonel Nesbitt's notes to Lieutenant Shaw, I filed a

**2**  complaint with the Inspector General, DoD Inspector General,

**3**  saying one of the things we'd like you to look into is

**4**  whether the investigator improperly provided evidence to

**5**  Lieutenant Shaw.  And I said in there it is unknown where he

**6**  got this from, which was demonstrably true at the time.

**7**  Obviously, the first time I found out that the notes came

**8**  from the FNAEB was the first day that I stood before Your

**9**  Honor in the courtroom at that preliminary hearing.

**10**      **THE COURT:**  And just to -- as an officer of the

**11**  Court, I'm asking you in your conversation with Mr. Prine,

**12**  did he ever indicate to you anything that he had learned

**13**  about how Mr. -- Lieutenant Shaw had obtained the notes or

**14**  from where Lieutenant Shaw had obtained the notes?

**15**      **MR. PARLATORE:**  No, he did not.

**16**      **THE COURT:**  So Mr. Montalvo, what else do you need

**17**  then?  I mean, it may not be terribly helpful for you on

**18**  this, but what else could you want to ask Mr. Prine about

**19**  given this?  Mr. Parlatore's making these comments to the

**20**  Court not only as an officer of the Court, but subject to

**21**  the penalties for making false statements.  If need be, he

**22**  can be put under oath to make this.

**23**      So the question is what else do you need from

**24**  Mr. Prine?

**25**      **MR. MONTALVO:**  Yes, Your Honor, so --

**1**       **THE COURT:**  I mean, isn't it just speculative to

**2**   think that Mr. Prine is going to say no, he's lying?

**3**       **MR. MONTALVO:**  Well, let me make a couple of

**4**   points, Your Honor.  First, Mr. Parlatore is indicating that

**5**   he's simply saying -- during his testimony, he specifically

**6**   stated that the purpose of the statement that he made was to

**7**   have Lieutenant Shaw and/or Mr. Ursini be investigated

**8**   criminally --

**9**       **THE COURT:**  No, let me just stop you there,

**10**  because that's all for another day, about whether -- about

**11**  the merits of the case.  The present purpose of today is

**12**  just whether you can meet the relatively substantial burden

**13**  of taking discovery from a reporter.

**14**      **MR. MONTALVO:**  Yes, Your Honor.  So the break

**15**  in -- the part of the statement was break in into the

**16**  office.  So the whole point of this is whether or not -- why

**17**  Mr. Parlatore's saying in January, after he's had this

**18**  conversation with Mr. Prine in August, that Lieutenant Shaw

**19**  potentially broke into, broke into his CO's office, his XO's

**20**  office, to get these notes.  And Mr. Prine is reading -- or

**21**  referencing an e-mail that is very detailed, Your Honor.

**22**  It's three pages with the attachments that Mr. Parlatore is

**23**  referring to.  He's saying that he didn't tell him about it,

**24**  but then he says in here your client sent him a whole bunch

**25**  of stuff of what happens when Mr. Prine or when a reporter

**1**  gets documents like that provided to him.  So they had an

**2**  entire conversation about this very e-mail, and now --

**3**         **THE COURT:**  So let me ask you, Mr. Montalvo, are

**4**  you then suggesting that the reason you want to speak to

**5**  Mr. Prine is because what you think that Mr. Parlatore just

**6**  told me is not true and you want to show it's not true?

**7**         **MR. MONTALVO:**  That's correct, yes, Your Honor.

**8**         **THE COURT:**  So let me ask Mr. Weeks this question:

**9**  Would Mr. Prine be prepared to indicate, for purposes of

**10**  resolving this dispute, whether he has any evidence that is

**11**  relevant to that question?  In other words, I'm not asking

**12**  him to vouch for every word that Mr. Parlatore has said, but

**13**  indicate to the Court in good faith as to whether he would

**14**  in fact have any evidence to offer that would be relevant to

**15**  the veracity of that statement.

**16**         **MR. WEEKS:**  Your Honor, I would need to discuss

**17**  that with my client.

**18**         **THE COURT:**  Okay, fair enough.  Mr. Montalvo,

**19**  anything else you want to add?

**20**         **MR. MONTALVO:**  No, but I'd ask Mr. Keesling since

**21**  he briefed this.

**22**         **THE COURT:**  Mr. Keesling, I take it you're not

**23**  admitted, but I will permit you -- I will grant a limited

**24**  pro hac for purposes of just proceeding today.

**25**         **MR. KEESLING:**  Thank you, Your Honor.  I hope you

**1** admit me later, Your Honor, in the big picture.

**2**      **THE COURT:**  I'll have to wait and see your motion.

**3**      **MR. KEESLING:**  I'll try to make sure that I don't

**4** do anything today that might prejudice that.  First and

**5** foremost, I think it's very important to understand the only

**6** reason Carl Prine is being part of the discussion today is

**7** because Mr. Parlatore included him in his FRCP 26(a)(1)

**8** initial disclosures.  So we're really testing the

**9** information that Mr. Parlatore has included in his defenses.

**10** He has not indicated through 26(e), FRCP 26(e), that there's

**11** any significant changes in terms of supplementing

**12** disclosures or responses.  So we're left with I want to

**13** defend myself and use Carl Prine as a witness to defend

**14** myself --

**15**      **THE COURT:**  So let me pause you there and just ask

**16** Mr. Parlatore:  Do you intend to call Mr. Prine or to rely

**17** on any testimony from Mr. Prine in this proceeding?

**18**      **MR. PARLATORE:**  No, Your Honor, I don't.

**19**      **THE COURT:**  Okay.

**20**      **MR. KEESLING:**  And so under Rule 26(e), he would

**21** need to supplement, at least strike that, as a prospective

**22** witness if he doesn't believe that's the case.  Otherwise,

**23** we're left with --

**24**      **THE COURT:**  I mean, I think there's a difference

**25** between his identifying, as is his obligation, people who

**1**      **THE COURT:**  So I think, Mr. Weeks, I'm going to

**2**   grant your motion in part, subject to one proviso.  And that

**3**   is that I'd like you to go back to your client and have a

**4**   conversation with your client about whether your client can

**5**   make a representation to the Court as to whether he has or

**6**   does not have any relevant information with respect to this

**7**   one narrow question.  If he says he doesn't have any

**8**   relevant information with respect to that question, I think

**9**   we're done.  If he does have relevant information, then I

**10**   have to think harder about it.  If he says I don't feel

**11**   comfortable answering that question one way or the other in

**12**   light of the journalistic principles involved, I'll have to

**13**   figure out what to do.

**14**      **MR. WEEKS:**  Your Honor, a couple of questions

**15**   about that, just to make sure that I understand the one

**16**   narrow question that you're looking for our client to

**17**   answer.  Is that -- go ahead, excuse me.

**18**      **THE COURT:**  I'm happy to state it for you or if

**19**   you want to state it for me and I can tell you whether it's

**20**   right, whichever way you want to proceed.

**21**      **MR. WEEKS:**  Go ahead, Your Honor.

**22**      **THE COURT:**  So the one narrow question is whether

**23**   Mr. Prine told Mr. Parlatore that, according to Mr. Shaw,

**24**   the notes that he obtained came from the board, the record

**25**   from the board proceeding.

**1**      **MR. MONTALVO:**  The FNAEB?

**2**      **THE COURT:**  I'm sorry?

**3**      **MR. MONTALVO:**  FNAEB, Your Honor?

**4**      **THE COURT:**  Correct.

**5**      **MR. WEEKS:**  And we can submit Mr. Prine's answer

**6**  to this question in writing?

**7**      **THE COURT:**  Yeah, you can just file -- you tell me

**8**  how much time you want, and I can just have you file a

**9**  status report with the Court just letting me know.  Just

**10**  tell me how much time.  I know it's the holidays, so I'll

**11**  leave it up to you.

**12**      **MR. WEEKS:**  Your Honor, I would also ask, if our

**13**  client does have responsive information to that question and

**14**  it is something that he's willing to provide, would that be

**15**  something that -- could he provide that relevant information

**16**  in writing rather than through a deposition?

**17**      **THE COURT:**  I think so, yes.

**18**      **MR. WEEKS:**  Okay.  Thank you, Your Honor.  We will

**19**  check with our client on that issue.  I think I'd ask --

**20**      **THE COURT:**  You know, and I do think that -- I

**21**  just want to be clear, I'm not ordering him to do anything

**22**  other than say:  I can't answer that or I'm not prepared to

**23**  that answer, I don't have any relevant information or I do

**24**  have relevant information.  That's all I'm asking him to do

**25**  at this point.

**1**          **MR. WEEKS:**  Understood, Your Honor.  With the

**2**    holiday, perhaps we could have until January 5th to submit

**3**    our update to the Court?

**4**          **THE COURT:**  That's fine.  So I'll direct that by

**5**    January 5th, you just file a status report answering my

**6**    question with one of those three possible responses.

**7**          **MR. KEESLING:**  Would that include the forwarding

**8**    or reading of any of the e-mail that was in question?

**9**          **THE COURT:**  Well, you know, if there's an e-mail

**10**   that was forwarded, there ought to be some documentary trail

**11**   of that that could be produced otherwise in discovery.  So I

**12**   don't think the reporter needs to address that.

**13**          **MR. PARLATORE:**  Your Honor, may I address the

**14**   forwarding of the e-mail issue real quick?

**15**          **THE COURT:**  Yes, please.

**16**          **MR. PARLATORE:**  Because Mr. Montalvo said that I

**17**   basically asserted privilege to all that, and that's just

**18**   not true.  The e-mail exchange between Mr. Prine and myself

**19**   on this subject I disclosed to him.  All the e-mails that

**20**   have existed here was me forwarding to Mr. Prine the copy,

**21**   along with the original e-mail, that Lieutenant Colonel

**22**   Nesbitt sent to the Inspector General.

**23**          **THE COURT:**  Let me ask you, have you preserved all

**24**   the e-mails so that if there was an e-mail from Mr. Prine to

**25**   you, you would have it?

1                    C E R T I F I C A T E

2

3               I, **Jeff M. Hook, Official Court Reporter,**

4      certify that the foregoing is a true and correct transcript

5      of the record of proceedings in the above-entitled matter.

6

7

8

9      <u>December 27, 2022</u>                    _____

10                  **DATE**                        **Jeff M. Hook**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25